## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### 1:08cv434

BOND SAFEGUARD INSURANCE      )
COMPANY,                      )
                             )
            Plaintiff,        )
                             )
Vs.                           )       MEMORANDUM AND
                             )       RECOMMENDATION
LR BUFFALO CREEK, LLC, *et al.*,   )
                             )
            Defendants.       )
_____  )

**THIS MATTER** is before the court in accordance with 28, United States Code, Section 636(b), for consideration of the following ripe motions: (# 82)Motion to Dismiss Claims by Plaintiff; (#100) Motion to Dismiss Against Lender Defendants for Lack of Subject Matter Jurisdiction and Failure to State a Claim; and (#110) Defendants' Brief in Support of Their Motion to Dismiss Under Rule 12(b)(6) [reasserting Motion to Dismiss contained in their Answer]. Also before the court were the following motions: (#117) Motion for Partial Summary Judgment; (#121) Motion for Leave to File Amended Answer; (#123) Motion to Stay and Plea in Abatement; and (#127) Motion for Continuance Under Rule 56(F). A hearing on all ripe motions was conducted on April 29, 2009. All represented and unexcused

parties appeared. In addition to the ripe motions, the court also heard arguments on the Motion to Stay and Plea in Abatement and the Motion for Partial Summary Judgment. Having carefully considered those motions, reviewed the pleadings, and heard the arguments of counsel, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.     Introduction

This action was filed on September 12, 2008, and amended on October 30, 2008. Plaintiff names more than 30 different defendants in the original Complaint related to certain subdivision bonds hereinafter the "Grey Rock Subdivision Bonds," which were issued by the plaintiff for the development of the Grey Rock at Lake Lure Subdivision (hereinafter "Grey Rock Subdivision"), which is located in Rutherford County, North Carolina.   Such development is within the Western District of North Carolina.

In its Amended Complaint filed on October 30, 2008, plaintiff added six more causes of action related to bonds it issued in relation to a different subdivision, the Norris Lake Subdivision, which is located in Campbell County, Tennessee. Campbell County is within the Northern Division of the United States District Court for the Eastern District of Tennessee.

According to plaintiff, a third development known as Riversea Plantation should also be a part of this action. This development is located in Brunswick County, North Carolina, and is located within the Eastern District of North Carolina.

In addition to this action, plaintiff is pursuing claims related to the bonds in the United States Bankruptcy Court in the Middle District of Florida and in the United States Court for the Northern District of Georgia. Twenty-two of the thirty defendants named herein have taken bankruptcy, and those who have not taken bankruptcy have moved to dismiss this action. Those defendants moving to dismiss can be classified as being member of one of three groups: (1) the minority members of the developer LLC; (2) former employees of the developer LLC; and (3) the lenders.

## II.    The Parties

### A.    Plaintiff

Plaintiff is an insurance company organized and existing under the laws of the State of Illinois and having its principal place of business in the State of Tennessee. Id., ¶ 1.

### B.    The Development Companies

Defendant Land Resource LLC,[1] a Georgia limited liability company

---

[1]    Formerly known as Land Resource Companies, LLC .

(hereinafter "Land Resource"), has been the principal developer of the Grey Rock Subdivision. Id., ¶¶ 3 & 40. Defendant LR Buffalo Creek, LLC ("Buffalo Creek"), another Georgia limited liability company, is the single-purpose entity that Land Resource created to hold the contracts and other assets and liabilities for the purchase, development, and sale of the Grey Rock Subdivision. Id., ¶¶ 2 & 41. Land Resource has been the authorized manager and the controlling member of Buffalo Creek at all relevant times. Id., ¶ 42. Land Resource LLC is managed by Land Resource Group, Inc., a Georgia corporation. While each of these developers are Georgia LLCs, they have as their principal place of business the same office in Orlando, Florida. All three of these developers are among the 22 defendants now in Chapter 7 bankruptcy in the Middle District of Florida.[2]

### C.    The Developers

Defendant James Robert Ward is the chairman and chief executive officer of Land Resources Group, Inc., before 2007. Id., ¶ 44. Defendant Robert Vacko was

---

[2]     After the Amended Complaint was filed October 30, 2008, the following defendants filed for bankruptcy in the United States Bankruptcy Court in the Middle District of Florida: Blue Mist Farms, LLC; Bridge Pointe at Jekyll Sound, LLC; Clarks Hill Lake, LLC; Coastline Properties, LLC; Roaring River, LLC; Laird Bayou, LLC; Laird Point, LLC; Land Resource Group of North Carolina, LLC; Land Resource Orchards, LLC; Land Resource Satilla River, LLC; Land Resource Watts Bar, LLC; LR Baytree Landing, LLC; LR Riversea, LLC; Point Peter, LLLP, Villages at Norris Lake, LLC; Land Resource Meigs County, LLC; LRC Holdings, LLC; Land Resource Round Mountain, LLC; Southern HOA Management, LLC; LR Buffalo Creek, LLC; Land Resource, LLC; and Land Resource Group, Inc.

its chief financial officer from 2004 through 2007. Id., ¶ 45.

Taking the place of Ward and Vacko as the corporate officers of Land Resources Group, Inc., were defendant Michael Flaskey, who has been the chief executive officer since 2007, and defendant James Beaird, who has been the chief financial officer since 2007. Id., ¶ ¶ 46-47.

### D.    Minority Members

As discussed above, Buffalo Creek had as its managing member Land Resources. Id., ¶ 49. Buffalo Creek also had "minority members," which included Realan Investment Partners, LLLP, DPB Solutions, LLC, Weeks-Grey Rock, LLC, Euram Grey Rock Associates, L.P., Daniel D. Dinur, and Barrington H. Branch.

### E.    Other Subsidiaries Managed and Controlled by Buffalo Creek

Like Buffalo Creek, Land Resources created and then became managing member of 20 other named companies, all of which are defendants herein, but which are in bankruptcy. Id., ¶ 52; c.f. Docket Entry #96.

### F.    The Lenders

Defendants Wachovia Bank, N.A., and KeyBank, N.A., were both commercial real estate lenders to Land Resource and some of the other defendants. Id., ¶¶ 54-56.

## III.   The Operative Instruments

### A.    The Grey Rock Bonds

On or about January 2, 2007, id., Ex. B, plaintiff issued seven subdivision bonds in favor of Rutherford County, North Carolina (hereinafter the "obligee") in a total principal amount of $26,404,342.00. Id., Ex. B, at pp. 1-7. Such bonds were issued on behalf of Buffalo Creek as principal and Bond Safeguard as surety. Id. Each bond provided in relevant part that the

> Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amounts up to the Principal amount of this bond . . . .

Id.

## B.     The General Agreement of Indemnity ("GAI")

On or about August 12, 2003, id., Ex. C, three and one half years before the bonds were issued for the Grey Rock property, Mr. Ward signed and delivered a General Agreement of Indemnity (the "GAI") to plaintiff. Id., ¶ 64. Mr. Ward purportedly signed the GAI in his individual capacity, in his official capacity as the representative of Land Resource LLC, and on behalf of all "Affiliates, Subsidiaries, Now Owned and/or **Hereafter Created**, Controlled, Managed or Acquired." Id., ¶ 67 (emphasis added). There is no allegation that Buffalo Creek was then in existence. See id., ¶¶ 2, 41, 42, 48, 49, 50, & 52. The only temporal allegation relevant to the GAI as to Buffalo Creek is that it began selling lots in the Grey Rock development

in 2004. Id., ¶ 57.[3]

## C. Resolution By Rutherford County

On or about September 4, 2008, Rutherford County sent to plaintiff a Notice of Resolution, which was received by plaintiff on September 8, 2008. Id., at Ex. D. In the letter the attorney for Rutherford County provides notice to the plaintiff that the developer has defaulted on its obligations and demands that the plaintiff honor its obligations under the Bonds and either complete the improvements in a timely manner or pay the face amount of the Bonds to Rutherford County.

## IV. The Lot Sales

## A. Grey Rock

During the course of the development at Grey Rock, Buffalo Creek sold more than 400 lots and took in approximately $90,000,000.00. According to plaintiff, little or no work has been performed on the subdivision improvements required by Rutherford County and promised to the lot owners in the purchase agreements. Id., ¶ ¶ 59, 69. Plaintiff further alleges that Buffalo Creek failed to reserve revenues from lot sales to fund the completion of the infrastructure. Id., at 70.[4]

---

[3]     The Amended Complaint is silent as to the date incorporation of Buffalo Creek.

[4]     The court notes that upon inquiry from the court at the hearing, it was apparent that plaintiff failed to require the developer to set aside or escrow funds from each lot sale for completion of such improvements.

Plaintiff goes on to allege that rather than reserve funds for the completion of the Grey Rock property, lot sales revenues were "utilized for other purposes," including (1) "improper distributions" to Mr. Ward, other developer defendants, and the minority members; (2) funding for subsidiary defendants and other development projects; and (3) interest payments and fees to the lender defendants for other development projects. Id., ¶ 71. Plaintiff goes on to accuse the lender defendants of "Knowingly and voluntarily" participating in "diversion of . . .lot sale revenues" and refusing to release the funding Buffalo needs to complete the promised improvements. Id., ¶ 72.

Plaintiff states that it has incurred costs and set aside a contingency fund to cover its obligations under the bonds. Plaintiff has not paid the bond or performed the work.

**B.     Norris Lake**

In what appears to be a unique method of pleading, plaintiff adds or grafts on in its Amended Complaint additional allegations of fact concerning the Norris Lake property after asserting its Grey Rock causes of action. The factual allegations are very similar, but only 66 lots have been sold in that development and only $5,721,325.00 collected in lot sales revenue. With plaintiff being obligated to Campbell County, Tennessee, in an amount exceeding $15,000,000.00, it would

appear that lot sales at Norris Lake come no where near the obligations assumed by plaintiff, which is inapposite to the Grey Rock property where lots sales were allegedly more than treble the bond obligation. In addition to the roads and utilities, plaintiff appears obligated to construct or pay for an expensive waste water treatment facility left undone by the developer. Defendant Wachovia Bank, N.A., does not appear to be a lender on such property, only defendant KeyBank, N.A. is alleged to be a lender as to such development. Plaintiff states that it has incurred costs and set aside a contingency fund to cover its obligations under the bonds. Plaintiff has not paid the bond or performed the work.

For the purpose of brevity, the court will not further summarize the allegations as to this property as they are nearly identical to the facts alleged as to the Grey Rock property.

## V.    Plaintiff's Claims

In the Amended Complaint, plaintiff has asserted 12 causes of action. The first six causes of action relate to the property located in the Western District of North Carolina, known as Grey Rock:

(1)    Indemnification under the GAI, Against the GAI Indemnitors, for the Grey Rock Defaults & Damages;

(2)    Exoneration under the GAI, Against the Indemnitor Defendants, for the

Grey Rock Defaults & Damages;

(3)     Breach of Fiduciary Duty, Against the Grey Rock Developer Defendants, for the Grey Rock Defaults & Damages;

(4)     Aiding & Abetting Breach of Fiduciary Duty, Against the Grey Rock Minority Member Defendants, the Subsidiary Company Defendants, and the Lender Defendants, for the Grey Rock Defaults & Damages;

(5)     Unjust Enrichment, Against All Defendants, for the Grey Rock Defaults & Damages; and

(6)     Equitable Lien, Against All Defendants, for the Grey Rock Defaults & Damages.

In the next six causes of action, plaintiff asserts causes of action against these defendants based on bonds it issued for the Norris Lake property in the Eastern District of Tennessee, known as Norris Lake:

(7)     Indemnification under the GAI, Against the GAI Indemnitors, for the Norris Lake Defaults & Damages;

(8)     Exoneration under the GAI, Against the Indemnitor Defendants, for the Norris Lake Defaults & Damages;

(9)     Breach of Fiduciary Duty, Against the Norris Lake Developer Defendants, for the Norris Lake Defaults & Damages;

(10)  Aiding & Abetting Breach of Fiduciary Duty, Against the Subsidiary Company Defendants and KeyBank, N.A., for the Norris Lake Defaults & Damages;

(11)  Unjust Enrichment, Against All Defendants, for the Norris Lake Defaults & Damages; and

(12)  Equitable Lien, Against All Defendants, for the Norris Lake Defaults & Damages.

As is apparent from a review of the Amended Complaint, plaintiff has over pleaded its claims in regards to Norris Lake inasmuch as there are no allegations against Wachovia Bank, N.A., as to such property, but plaintiff has used the phrase "all defendants."

## VI.  The Motions to Dismiss

### A.  Minority Members Motion to Dismiss

Realan Investment Partners, LLLP, DPB Solutions, LLC, Weeks-Grey Rock, LLC, Euram Grey Rock Associates, L.P., Daniel D. Dinur, and Barrington H. Branch (hereinafter "minority members") have moved to dismiss under Rule 12(b)(2), Federal Rules of Civil Procedure, contending that this court lacks personal jurisdiction over them.  They contend that as passive investors in this development, they lack the contacts necessary to support the assertion of specific personal

jurisdiction. They believe that any action against them should be brought in the Northern District of Georgia where they reside.

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction. Id.

In this case, plaintiff must show specific personal jurisdiction. At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 317-20 (1945). Determining what is fair requires review of the quantity and quality of the defendant's contacts with the forum state. <u>Perkins v. Benquet Mining Co.</u>, 342 U.S. 4376 (1952). As the Court of Appeals for the Fourth Circuit has stated:

> [W]hen evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required. First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution.

<u>English & Smith v. Metzger</u>, 901 F.2d 36, 38 (4th Cir. 1990) (citation omitted).

In considering defendants' Motion to Dismiss, analysis begins with the two-step approach furnished by the Fourth Circuit. The North Carolina Supreme Court has held that the state's jurisdictional statute applies to defendants who meet the minimal contacts requirement of <u>International Shoe Co. v. Washington</u>, <u>supra</u>. <u>See</u> <u>Dillon v. Numismatic Funding Corp.</u>, 291 N.C. 674 (1977); <u>see also</u> <u>Western Steer-Mom & Pops v. FMT Invs., Inc.</u>, 578 F. Supp. 260, 264 (W.D.N.C. 1984) . Because North Carolina's long arm statute asserts jurisdiction to the maximum limits of Due Process, the two-pronged approach approved by the circuit in <u>English & Smith</u>

"collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." Fieldcrest Mills, Inc. v. Mohasco Corp., 442 F. Supp. 424, 426 (M.D.N.C. 1977). Thus, this court dispenses with analysis under the North Carolina statute and goes directly to Due Process analysis, which requires consideration of five factors in determining whether there are sufficient minimum contacts to satisfy Due Process:

(1)  quantity of the contacts;
(2)  nature and quality of the contacts;
(3)  source and connection of the cause of action to the contacts;
(4)  interest of the forum state; and
(5)  convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v. Mohasco Corp., supra, at 427; see also N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute). The burden is on plaintiff to establish that Due Process is sufficient for jurisdiction to be asserted over these defendants. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985).

* * *

The court has carefully and closely read each paragraph of the Amended Complaint and each exhibit annexed thereto. As mentioned above, the Amend Complaint fails to provide key dates, such as the date of incorporation of Buffalo

Creek, the dates the minority members became members of Buffalo Creek, or even the dates the GAI or Grey Rock bonds were created. Indeed, the court had to review the exhibits to determine that the GAI was executed in 2003, that the bonds issued in 2007, and that Buffalo Creek did not begin selling lots until 2004.

Taking the allegations of the Amended Complaint in a light most favorable to plaintiff, it would appear that plaintiff's assertion of personal jurisdiction over the minority members of Buffalo Creek is tied completely to their membership in the LLC, see Plaintiff's Reponse (docket entry #104), which of course did have the requisite contacts with North Carolina. The case law in the Western District of North Carolina is well settled on this issue, with Judge Mullen addressing the precise issued raised herein:

> In the present case, Plaintiff asserts that "Moving Defendants reached out beyond their respective states and created a continuing relationship and ongoing obligations with [Plaintiff] by virtue of their alleged membership in Blackwater." Pl.'s Mem. in Resp. to Moving Def.'s Mot. to Dismiss 7. It further asserts that by their "use and control of Blackwater as alleged members thereof, to pursue the Loan from Mountain Funding," Moving Defendants purposely availed themselves of the privilege of conducting business in North Carolina. Pl.'s Mem. in Resp. to Moving Def.'s Mot. to Dismiss 7-8. However, membership in a business entity alone is not a basis for personal jurisdiction and the Plaintiff must show that the Moving Defendants have minimum contacts with North Carolina independently of Blackwater's contacts. *See Hansen*, 357 U.S. at 253. Plaintiff has not made such a showing. The alleged acts in Plaintiff's supporting memorandum were conducted by Blackwater, not Moving Defendants. Blackwater negotiated and agreed

to the terms of the loan contract, had rights and obligations under its terms, and allegedly defaulted. Further, affidavits submitted by Moving Defendants state that none of them has the requisite minimum contacts for specific personal jurisdiction in North Carolina.

Mountain Funding, LLC v. Blackwater Crossing, LLC, 2006 WL 1582403, 3 (W.D.N.C. 2006). As in Mountain Funding, the minority defendants have submitted affidavits indicating that they have had no contacts with the State of North Carolina in regards to their participation as minority members of Buffalo Creek. Such affidavits are unrebutted. In addition, it would appear that the acts plaintiff attempts to ascribe to the minority defendants are the acts of Buffalo Creek itself or the acts of its managing member in executing the GAI and securing the bonds. Those acts of others simply cannot be attributed to the minority members. Because plaintiff has been unable to show any contacts, the undersigned will dispense with the five step analysis as an exercise in futility. Had plaintiff secured GAI's from the minority members or had them co-sign the bonds as principals, the undersigned would have absolutely no constitutional concerns as to haling these defendants into this court.[5]

The undersigned must, therefore, respectfully recommend to the district court that the minority members' Motion to Dismiss pursuant to Rule 12(b)(2) be allowed and that this action be dismissed as to such defendants without prejudice as to refiling

---

[5] The allegations concerning the minority members activities in regards to the Tennessee property are completely irrelevant to contacts with the forum state, North Carolina.

such claims in a state where jurisdiction may be found.

**B.    Lender Defendants' Motion to Dismiss**

**1.    Introduction**

The lender defendants have moved to dismiss under Rule 12(b)(1), contending that this court lacks jurisdiction over the subject matter of this action, and under Rule 12(b)(6), for failure to state a cognizable claim.   The lender defendants appear to be named in the fourth, fifth, sixth, tenth, eleventh, and twelfth causes of action.   These claims are for Aiding & Abetting Breach of Fiduciary Duty, Unjust Enrichment, and Equitable Lien.[6]  First, the lender defendants contend that plaintiff has improperly attempted to assert claims belonging to the Trustee of the bankruptcy estate (and  in reply argues that plaintiff is for the first time - - in its response - -  attempting to assert claims belonging to lot owners), that plaintiff has improperly asserted claims against them that could only be based on a fiduciary relationship that does not exist as a matter of law, and that the only relationship plaintiff has with any party or parties (the debtor defendants) is based on contracts from which no fiduciary relationship can arise.  Lender Defendant's Brief in Support, at 2 (Docket Entry #101).

**2.    Rule 12(b)(1) Standard**

---

[6]        As mentioned above, Wachovia Bank, N.A., has been improperly named in counts 10, 11, and 12 as there are no allegations of fact that it was a lender in the Norris Lake project.

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district

court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

### 3.    Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule

12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiff's complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001). However, the Court recently held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Twombley, to survive Rule 12(b)(6) scrutiny, the claims must at a minimum be "plausible." Id. While the court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

The presence of a few conclusory legal terms does not insulate a

complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motion, the court has accepted as true the facts alleged by plaintiff in the Amended Complaint and will view them in a light most favorable to plaintiff.

### 4. Claims Four and Ten: Rule 12(b)(6) and Fiduciary Duty

Plaintiff's fourth and tenth claims against the lender pivot on the existence of some fiduciary relationship. In North Carolina, a fiduciary relationship must exist between the parties before a claim can arise for breach of fiduciary duty. White v. Consol. Planning, Inc., 166 N.C.App. 283, 293 (2004), *disc. review denied*, 359 N .C. 286 (2005). It is well settled that a fiduciary relationship arises only when plaintiff places special confidence in another person, to the extent that the party in whom such special confidence is placed is bound to act in the best interests of the party placing the confidence. Dalton v. Camp, 353 N.C. 647, 651 (2001). An essential element of

the fiduciary relationship is that the purported fiduciary exercised influence over the plaintiff by virtue of the trust placed in such alleged fiduciary.  Id., at 652.

North Carolina law is also clear that a fiduciary relationship can not be founded upon contract.  The only relationship plaintiff has with any defendant in this matter is by way of contract, specifically, the subdivision bonds and the underlying indemnity agreements with the developer defendants. There is no allegation that plaintiff undertook any negotiations with the lender defendants or attempted to make them principals or have them execute GAIs.

> It is well established that 'parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C.'

Smith v. GMAC Mortg. Corp., 2007 WL 2593148, at 6 (W.D.N.C. 2007), citing Branch Banking & Trust v. Thompson, 107 N.C.App. 53 (1992).  Further, the Court of Appeals for the Fourth Circuit recognized in South Atlantic Ltd. P'ship of Tenn. L.P. v. Riese, 284 F.3d 518, 533 (4th Cir. 2002), that

> North Carolina is reluctant to impose 'extracontractual fiduciary obligations' in the context of general commercial contracts; thus, even when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other."

Id.  Thus, as a matter of law, plaintiff cannot allege a cause of action for breach of

fiduciary duty against the developer defendants, making a claim for aiding and abetting such a breach equally incognizable.[7]

The undersigned will, therefore, recommend that the lender defendant's Motion to Dismiss claims four and ten be granted and that such claims be dismissed without prejudice in accordance with Rule 12(b)(6).

## 5. Claims Five, Six, Eleven, and Twelve: Rule 12(b)(1)

In claims five, six, eleven, and twelve, plaintiff asserts claims against the lender defendants under theories of unjust enrichment and equitable lien. The lender defendants contend, under Rule 12(b)(1), that plaintiff lacks standing to assert these claims which, if they exist, belong to the bankruptcy estate or the lot owners.

As to plaintiff's assertion of a claim for unjust enrichment, North Carolina law is clear that:

> An implied contract is not based on an actual agreement, and *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment.

Whitfield v. Gilchrist, 348 N.C. 39, 497 S.E.2d 412, 415 (N.C. 1998); accord Pritchett & Burch, PLLC v. Boyd, 169 N.C.App. 118, 124 (2005).

---

[7]     Plaintiff's new theory that it can assert these equitable claims based on a fiduciary relationship between the lot owners and the developers, that it somehow acquired without the assent of the land owners, will be explored in the next section.

Plaintiff first argues that there would be no reason for the developer defendants in bankruptcy to raise these claims in the bankruptcy proceeding inasmuch as the debtor in possession in a Chapter 11 are the entities accused of malfeasance. This argument holds no weight inasmuch as it appears that the proceeding has been converted to a Chapter 7 and a trustee appointed. Such claims now belong to the trustee, if they exist, and plaintiff simply lacks standing to assert in this action claims that are actionable by the trustee in bankruptcy.

Plaintiff next argues that it is asserting such equitable claims on behalf of the lot owners, a contention which is not made in the Amended Complaint. Plaintiff has attached no written authorizations of the lot owners or assignments of rights to its Amended Complaint. Plaintiff theorizes that the developer defendants owed a fiduciary duty to the lot owners, which existed because the developer defendants held lot sale proceeds in constructive trust for the benefit of the lot purchasers. Plaintiff further theorizes that it acquired the right to assert these rights belonging to the lot owners through subrogation.

Plaintiff argues that the developer held the sales proceeds in constructive trust, but does not allege the origin of any fiduciary relationship that arose between the lot owners and the developer. In North Carolina, no fiduciary relationship exists between the developer and purchaser of property. <u>Morris v. Hennon & Brown</u>

Properties, LLC, 2008 WL 2704292, at 5 (M.D.N.C. 2008). In North Carolina,

> there are two types of fiduciary relationships: (1) those that arise from "legal relations such as attorney and client, broker and client ... partners, principal and agent, trustee and *cestui que* trust," and (2) those that exist "as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other."

Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F.Supp.2d 540, 546 (M.D.N.C.1999)

(citation omitted). Clearly, there is no legal relationship upon which to base a

fiduciary relationship between a developer and a lot purchaser. Morris, supra.

Therefore, plaintiff would be obligated to plead and later prove the existence of a

fiduciary relationship existing in fact. S.N.R. Management Corp. v. Danube Partners

141, LLC, 659 S.E.2d 442, 451 (N.C.App. 2008). To do so, plaintiff would have to

prove that the developer exercised the "'amount of control and domination required

to form a fiduciary relationship outside that of the normal relationships recognized

by law.'" Id., at 452 (citation omitted).

> Only when one party figuratively holds all the cards-all the financial power or technical information, for example-have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.

Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 348 (4th Cir.

1998). Certainly, it cannot be argued and has not been alleged that a developer or

seller of real property holds all the cards or exercises all the financial power in the

sale of a lot - - clearly, the buyer holds any number of cards, including the purchase

money trump card. Indeed, the buyer can choose not to purchase the property. While it would appear from the allegations of the Amended Complaint that the developer promised to build improvements in the purchase agreement, the mere breach of promise, without a fiduciary or special relationship recognized by law or fact, would be insufficient to impose to impose a fiduciary duty or a constructive trust. The lot owners remedy would be to bring an action for breach of the promise, because a "constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law." Security Nat. Bank of Greensboro v. Educators Mut. Life Ins. Co., 265 N.C. 86, 95 (1965).

Even if a fiduciary relationship exists between a developer and a lot purchaser in North Carolina - - a conclusion which would be against the weight of North Carolina case law - - plaintiff has failed to satisfy the court that it would have standing to assert those claims. Fed.R.Civ.P. 12(b)(1). Specifically, while plaintiff has argued that it is subrogated to such claims, it has failed to tender any document executed by any of the 400 lot owners transferring their rights to plaintiff. Perhaps the reason it has no such *indicia* of subrogation is that it has neither paid any lot owner any sum of money nor paid Rutherford County for the building of the roads and other improvements. It is fundamental that to be subrogated to the claims of another, the plaintiff must have actually paid that party's claims. Pearlman v.

Reliance Insur. Co., 371 U.S. 132, 139 (1962). Indeed, there is nothing in the bonds which requires the plaintiff to pay the lot owners any amount. As clearly set forth by the courts of the District of Maryland, "[t]he Fourth Circuit has explained that the right to subrogation arises only after actual payment of a debt." Handex of Md., Inc. v. Waste Mgmt. Disposal Servs. of Md., Inc., 458 F.Supp.2d 266 (D.Md. 2006). This has been the law in North Carolina since at least 1831: "[t]o enable a surety to recover for money paid to the use of his principal, he must prove an actual payment in satisfaction of the debt." Hodges v. Armstrong, 3 Dev. 253, 1831 WL 479, 3 (N.C. 1831).[8]

Finding that: (1) no fiduciary relationship exists at law and that none has been pleaded as a matter of existing fact; (2) plaintiff lacks standing to assert claims on behalf of those whose claims it has not paid; and (3) plaintiff has failed to first pay or prove actual payment in satisfaction of the debt as required by well settled North Carolina law, the undersigned must recommend that the lender defendants' Rule 12(b)(1) Motion to Dismiss the fifth, sixth, eleventh, and twelfth claims be allowed.

## C. Developer Defendants' Motion to Dismiss

---

[8] By way of facsimile sent directly to chambers the day after the hearing, plaintiff appears to contend that it has made a substantial payment on the bond as to the Norris lake development. The undersigned has declined to consider such facsimile in making this Recommendation.(#149)

### 1. Introduction

Developer defendants Michael Flaskey, Robert Vacko, and Jason Beaird have moved[9] under Rule 12(b)(6) to dismiss the claims asserted against them.[10] These defendants are named in the third, fifth, sixth, ninth, eleventh, and twelfth causes of action. These defendants have moved under Rule 12(b)(6) to dismiss each of these claims for failure to state causes of action against them. The court will apply the Rule 12(b)(6) standard of review as set forth above.

### 2. Third and Ninth Causes of Action

In the third and ninth causes of action, plaintiff contends that these defendants, officers of the developer as discussed above, breached a fiduciary relationship they had with plaintiff (and the lot owners and the county) to preserve and manage the lot sale revenues in such a manner as to have sufficient funds with which to complete the infrastructure improvements. Amended Complaint, ¶ 88. Plaintiff contends that they breached their fiduciary duty to preserve and manage such funds by failing to properly preserve and manage the lot sales revenues. Id., ¶ 89.

What is clearly missing is any allegation that would support a finding that a

---

[9] While these defendants did not file a new motion as required, such method of bringing to life Rule 12(b) motions preserved in an answer is specifically allowed by Local Civil Rule 7.1(C)(1). The undersigned waives the technical misstep in this case.

[10] Mr. Ward filed an answer along with these defendants and appears to be represented by the same attorneys, but has not joined in the arguments as to this motion.

fiduciary relationship existed either at law or as a matter of fact between plaintiff and these defendants. <u>Rhone-Poulenc Agro S.A. v. Monsanto Co.</u>, <u>supra</u>. There are no allegations that plaintiff reposed a "special confidence" in any of these defendants, or that they exercised the "'control and domination required to form a fiduciary relationship outside that of the normal relationships recognized by law.'" <u>S.N.R. Management Corp. v. Danube Partners 141, LLC</u>, <u>supra</u>.

Plaintiff is correct that an officer or director of a corporation may have a fiduciary duty to creditors or stockholders of the corporation. <u>Snyder v. Freeman</u>, 300 N.C. 204, 216 (1980). The surety of a performance bond is not, however, a creditor of a principal - - it provides protection to the obligee (the county) for a principal in exchange for premium payments. <u>Capitol Indem. Corp. v. Aulakh</u>, 313 F.3d 200, 201-02 (4th Cir, 2002). No argument has been made by plaintiff that the GAI makes it a creditor, and the undersigned must consider this argument to be waived.[11]

### 3.    Fifth and Eleventh Causes of Action

In the fifth and eleventh causes of action, plaintiff contends that these

---

[11]    The court could find no published decision holding that a GAI would make a surety a creditor of a corporation. Logically, it would not follow that a GAI would make a surety a creditor inasmuch as a GAI merely broadens the pool of potential indemnificators, not the obligation.

developer defendants have been unjustly enriched.  The elements of a cause of action for unjust enrichment in North Carolina are:

(1)     conveyance by plaintiff of a benefit to a party;

(2)     conscious acceptance of the benefit by the party; and

(3)     that the benefit was not gratuitous or through interference in the affairs of the other party.

Booe v. Shadrick, 322 N.C. 567, 570 (1988).

The fundamental problem with asserting unjust enrichment in these circumstances is that the claim is founded on the existence of a contract between plaintiff and the company for which these defendants worked.  A claim in quasi contract for unjust enrichment is simply a vehicle for the court to impose an implied contract, which courts will not do where a contract already exists. "If there is a contract between the parties the contract governs the claim and the law will not imply a contract."  Id. (citation omitted).

Even if the existence of such contractual relationship does not prevent the claim, it appears that plaintiff has failed to allege what benefit is conferred on these developer defendants.  By failing to allege facts that would support a finding as to this element, plaintiff's fifth and eleventh causes of action must fail.

**4.     Sixth and Twelfth Causes of Action**

In these claims, plaintiffs seeks to have the court impose an equitable lien of the lot sale revenues and other assets collected by these defendants on behalf of the developer, which it contends were distributed or diverted by or to the defendants for uses other than the completion of the infrastructure. An equitable lien is dependent on a showing of unjust enrichment. <u>Embree Constr. Group, Inc. v. Rufcor, Inc.</u>, 330 N.C. 487, 496 (1992). As provided above, plaintiff has not stated such a claim, thus the resulting equitable lien it seeks - - at least as to these developer defendants - - is unavailable.

**5. Incorporation of Earlier Arguments, Discussions, and Recommendations**

In response to the motion of these developer defendants, plaintiff also argued that it is asserting the claims of lot owners. The undersigned has, respectfully, addressed such issues above, including plaintiff's failure to first pay the claims which it now seeks to subrogate. For all those reasons, the undersigned will also recommend dismissal of the claims asserted against these developer defendants.

**D. Motion to Stay and Plea in Abatement and the Motion for Partial Summary Judgment**

**1. Motion to Stay and Plea in Abatement[12]**

---

[12] While such motion was not ripe at the time the hearing was calendared, it became ripe before the hearing and was argued by respective counsel.

Defendant Ward, who did not join in the Motion to Dismiss of his fellow developer co-defendants, has moved to stay this action in deference to another action filed by plaintiff against him and his wife in the United States Court for the Northern District of Georgia. <u>Bond Safeguard Insur. Co. v. Ward</u>, 09cv93 (N.D.Ga. 2009).[13] Such action was filed after this action and clearly duplicates the claims herein brought against Defendant Ward. In both actions, plaintiff contends that Defendant Ward diverted funds from the Grey Rock and Norris Lake developments. The key difference is that Defendant Ward's spouse is a party to the second action, which this court attributes to contentions that Mrs. Ward was complicit in secreting away assets belonging to the developer(s) of these projects.

Plaintiff cites in response to Defendant Ward's motion <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133 (2d Cir. 2000). In that action, the appellate court found that a second action was appropriate only insofar as those claims arose after the filing of the first complaint, finding that "a plaintiff must bring suit against the same defendant on all claims that relate to the same conduct transaction or event at the same time." <u>Id.</u>, at 139. Perhaps, it would have been better for plaintiff to bring his claims against Mrs. Ward in this action inasmuch as they appear to be directly tied

---

[13]     Defendant Ward also seeks a stay until plaintiff's claim in the bankruptcy proceeding for $72,411,974.20 has been resolved.

to the allegations in this matter that Defendant Ward diverted assets away from the developer entities.

The court must, however, play the cards as dealt. While jurisdiction over such claim may well have been properly laid in this court, the undersigned has determined that plaintiff lacks standing to bring this action inasmuch as it has failed to pay or perform its obligation under the bond. Thus, the action is premature, even as to Defendant Ward who appears to be the driving force behind the allegations of the Amended Complaint. Rather than stay or abate this action, the undersigned must recommend that the action against Defendant Ward also be dismissed without prejudice as to either bringing it in the Georgia action or refiling in this court after payment of the bond.

## 2. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for partial summary judgment, contending that it is entitled to indemnification of $7,000,000.00 for the Norris Lake bond and $542,371.94 for a bond on a development known as RiverSea, located in Brunswick County, North Carolina. RiverSea has not been and is not now a part of the action and will not be further discussed. As to the $7,000,000.00 indemnification, plaintiff does not state that it has paid such obligation, only that it has entered into an agreement with Emerson Properpties, LLC, under which it is obligated to pay to such

entity $7,000,000.00 in exchange for a release from all liability under the Norris Lake bonds.

As was made clear in both the Order setting the hearing and at the hearing, this court has reservations as to whether this court has jurisdiction to resolve issues concerning bonds for a development in Tennessee inasmuch as their has been no showing that any of the relevant acts, including the letting of the bonds, occurred in North Carolina. In response to such concerns, plaintiff has argued that this court has jurisdiction over all the claims plaintiff may have against these developers under the "pendent venue doctrine." The court disagrees.

> Under the doctrine of pendent venue, "a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued **federal claim**, even if venue of the pendent claim otherwise would not lie." *Banfield v. UHS Home Attendants, Inc.*, No. 96 Civ. 4850, 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997).

Bertz v. Norfolk S. Ry., 2003 WL 21713747, at *1 (N.D.Ohio 2003)(emphasis added). In this action, plaintiff has invoked the court's diversity jurisdiction, not its federal question jurisdiction. See Amended Complaint, ¶ 37. Plaintiff's reliance on Beatie v. United States, 756 F.2d 91 (D.C.Cir. 1985), abbrogated by Smith v. United States, 507 U.S. 197 (1993), is misplaced inasmuch as such action invoked federal question jurisdiction under Section 1391(b), to which pendent venue may well be

applicable.  Here, venue is governed by 28, United States Code, Section 1391(a), which provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).[14]  The applicability of supplemental venue to state law claims pendent to federal claims is also recognized by leading commentators:

> Under the doctrine of pendent venue, a court in its discretion may find venue where the pendent claim arises from the same nucleus of operative facts as a properly venued **federal claim** even if venue over the pendent claim would not otherwise be proper. The decision whether to exercise pendent venue is a matter of judicial discretion based upon the relatedness of the claims, judicial economy, convenience, and fairness. Thus, when two or more **federal** claims are brought and venue is properly laid as to one claim, that venue will support adjudication of the other related claim. The doctrine operates as an exception to the rule

---

[14]      None of these provisions would give this court venue over plaintiff's Norris Lake claims: none of the defendants to the Norris Lake claims reside in this judicial district or state; none of the events or omissions occurred in North Carolina, and the property is not located in North Carolina; and there is another district in which these claims could be brought, to wit, the Eastern District of Tennessee.

that venue must be established for each cause of action asserted in the complaint.

AMJUR FEDCOURTS § 1145, citing Wright, Miller, and Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3808. While one may argue in good faith for an extension of the pendent venue doctrine to actions brought under the court's diversity jurisdiction, the court can find no cases that clearly allow for such an extension.

It would appear, then, that plaintiff's motion for partial summary judgment as to the Norris Lake and RiverSea developments should be denied inasmuch as the court lacks venue as to the Norris Lake claims, there are no RiverSea claims in the Amended Complaint, and, finally, there is evidence upon which the court could find that plaintiff has paid these bonds,[15] the absence of which not only informs denial of the Motion for Partial Summary Judgment, but dismissal of this action. Hodges v. Armstrong, supra.[16]

### E.  Remaining Defendants

---

[15]     As mentioned above, plaintiff's improper submission to chambers of correspondence after the hearing does not constitute evidence that these bonds have been paid. See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)("To be admissible at summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" Id. (citation omitted)).

[16]     An excellent point was made at the hearing that, in addition to the law of the forum state,  it would be impossible to determine at trial the indemnification on the bonds or other damages until such time as plaintiff actually paid or performed.

The only defendants who now remain in this action are the 22 defendants who have filed for protection in the United States Bankruptcy Court, Middle District of Florida. As discussed above, the undersigned has concluded, *inter alia*, that it lacks jurisdiction over the subject matter of this lawsuit until such time as the bonds are first paid or performed. To simply stay this matter pending conclusion of matters in the bankruptcy court would be a exercise in futility. Further, plaintiff would not be without a remedy against the 22 bankrupt defendants inasmuch as it could file its claim, if it has not already done so, in the bankruptcy court. The court will, therefore, recommend conditionally dismissing without prejudice causes of action asserted against defendants in bankruptcy, pending such defendants in bankruptcy receiving relief from the stay in the Middle District of Florida.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     Motion to Dismiss Claims by Plaintiff (#82) be **ALLOWED**;

(2)     Motion to Dismiss Against Lender Defendants for Lack of Subject Matter Jurisdiction and Failure to Sate a Claim (#100) be **ALLOWED**;

(3)     Defendants' Brief in Support of Their Motion to Dismiss Under Rule 12(b)(6) [reasserting Motion to Dismiss contained in their Answer]

(#110) be **ALLOWED**;

(4) Motion for Partial Summary Judgment (#117) be **DENIED**;

(5) Motion for Leave to File Amended Answer (#121) be **DENIED** as moot;

(6) Motion to Stay and Plea in Abatement (#123) be **DENIED** as moot;

(7) Motion for Continuance Under Rule 56(F) (#127) be **DENIED** as moot; and

(8) this action be **DISMISSED** as follows:

(a) as to claims asserted against Defendant Ward, that the action be **DISMISSED** without prejudice as to plaintiff either bringing it in the Georgia action or refiling it in this court after payment of the bond;

(b) as to claims asserted against Realan Investment Partners, LLLP, DPB Solutions, LLC, Weeks-Grey Rock, LLC, Euram Grey Rock Associates, L.P., Daniel D. Dinur, and Barrington H. Branch, that the action be **DISMISSED** without prejudice under Rule 12(b)(1) and Rule 12(b)(2) as to plaintiff refiling the action were the jurisdiction may properly be found, to wit, the Northern

District of Georgia;

(c) as to claims asserted against defendants Michael Flaskey, Robert Vacko, and Jason Beaird, that all claims asserted against them be **DISMISSED** without prejudice for failure to state a cognizable claim under 12(b)(6);

(d) as to claims asserted against defendants Wachovia Bank, N.A., and KeyBank, N.A., that

 (1) the fourth and tenth claims be **DISMISSED** without prejudice in accordance with Rule 12(b)(6) for failure to state cognizable claims; and

 (2) the fifth, sixth, eleventh, and twelfth claims be **DISMISSED** in accordance with Rule 12(b)(1) without prejudice for lack of subject matter jurisdiction; and

(9) the remaining claims against the defendant in bankruptcy be conditionally **DISMISSED** without prejudice, subject to such defendants obtaining relief from the automatic stay to secure such relief.

The parties are hereby advised that, pursuant to 28, United States Code,

Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (**10**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: June 3, 2009

Dennis L. Howell
United States Magistrate Judge